Dean A. Dickie (*Admitted Pro Hac Vice*)
dickie@millercanfield.com
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Telephone: 312.460.4217
Facsimile: 312.460.4288
(*Lead Counsel*)

George L. Hampton IV (State Bar No. 144433)
ghampton@hamptonholley.com
Colin C. Holley (State Bar No. 191999)
cholley@hamptonholley.com
HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625
Telephone:  949.718.4550
Facsimile:  949.718.4580
(*Local Counsel*)

Attorneys for Defendants and Counterclaimants
PACIFIC HANDY CUTTER, INC., FRONT LINE
SALES, INC. and STANLEY BLACK &
DECKER, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SPELLBOUND DEVELOPMENT GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC HANDY CUTTER, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SACV 09-0951 DOC(ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,718,640**<br><br>DATE:  December 1, 2010<br>TIME:  7:30 a.m.<br>DEPT:  9D |

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................... 1

II. FACTUAL BACKGROUND ........................................................ 1

III. UNDISPUTED MATERIAL FACTS ........................................... 3

IV. ARGUMENT ............................................................................... 3

    A.   Summary Judgment of Invalidity Should be Granted Because The '640 Patent Was Both Rendered Obvious and Anticipated .............................................................................. 3

    B.   At Least Claims 1, 2 and 8 of U.S. Patent 6,718,640 Patent are Invalid ..................................................................................... 4

    C.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Invalid Under 35 U.S.C. § 102(a) and (b) in view of Kahl ................................ 6

    D.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Walters ............... 9

    E.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Bailey ............... 11

    F.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Jones ............... 12

    G.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Matin ................ 13

    H.   Claims 3 and 4 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. § 103 by Kahl in View of Marshall .............................................................................. 15

    I.   Summary judgment of Non-Infringement Should be Granted Because the RSC-432 Does Not Infringe U.S. Patent 6,718,640 ......................................................................... 15

V. CONCLUSION ............................................................................ 19

i

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)...............3

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006)..............16

*AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374 (Fed. Cir. 2005) ...............................3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..........................4

*Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996) .......................................................16

*DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir. 2001) ..........................................17

*Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*
    305 F.3d 1303 (Fed. Cir. 2002) ...............................................................................16, 17

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309 (Fed. Cir.1998) .....17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831,
    152 L.Ed.2d 944 (2002)....................................................................................................16

*Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318 (Fed. Cir. 2008) .....................................6

*Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158 (Fed. Cir. 2004).......................................................16

*In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999)...........................................................................10

*Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989) ...............................................................4

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353 (Fed. Cir. 2002) ...................17

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003)......................17

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577
    (1996)................................................................................................................................15

*Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003)..................................16

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005)..............................................6

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105
    (2000)..................................................................................................................................4

*Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed. Cir. 2005) ..........................................15

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137
    L.Ed.2d 146 (1997)....................................................................................................16, 17

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

*Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340 (Fed. Cir. 2000)...........................................10

**STATUTES**

35 U.S.C. § 102(a) and (b)...........................................................................................6, 9

35 U.S.C. § 103.................................................................................................passim

35 U.S.C. § 103(a) .................................................................................................10

35 U.S.C. § 271(a) .................................................................................................15

35 U.S.C. § 371 (c)(1), (2), (4) ....................................................................................2

**COURT RULES**

Fed. R. Civ. P. 56(c) ...............................................................................................3

Local Rule 56.1 ......................................................................................................3

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    Defendants Pacific Handy Cutter, Inc. ("PHC"), Front Line Sales, Inc. ("Front
2  Line"), and Stanley Black & Decker, Inc. ("Stanley") (collectively "Defendants")
3  submit this Memorandum of Points and Authorities in Support of their Motion for
4  Summary Judgment as to the invalidity and non-infringement of U.S. Patent
5  6,718,640 ("the '640 patent").

6  **I.    INTRODUCTION**

7    The instant lawsuit represents a blatant bad faith attempt by Plaintiff to falsely
8  allege infringement of the '640 patent, U.S. Patent 7,726,029 ("the '029 patent"), and
9  U.S. Patent 7,356,928 ("the '928 patent").  This motion will focus solely on the '640
10 patent.  Despite Plaintiff's wrongful allegations of infringement of the '640 patent,
11 Defendants are entitled to summary judgment due to invalidity of claims 1, 2 3, 4 and
12 8 of the '640 patent based on obviousness and anticipation of those claims by the
13 Kahl patent and by the Kahl patent in view of the Waters, Bailey, Jones, Matin and
14 Marshall patents.  Indeed, in its Order denying Plaintiff's Motion for Preliminary
15 Injunction, this Court concluded, "In essence, the '640 Patent and the Kahl Patent
16 describe *identical* devices:  safety knives built in the form of a compartment that
17 houses a blade shielded by a blade cover, which can be recessed only upon the
18 pressing of a trigger and the blade coming in contact with an object."  *See*
19 Declaration of Dean A. Dickie filed concurrently herewith ("Dickie Decl.") at
20 Exhibit A, ¶2 (hereinafter "Exhibit A").  There exists no genuine issue of material
21 fact as to the invalidity of the '640 patent and as such, summary judgment should be
22 granted.  Defendants are further entitled to summary judgment that the RSC-432 box
23 cutter does not infringe the '640 patent because it is missing elements necessary to
24 the operation of the invention of the '640 patent.

25 **II.    FACTUAL BACKGROUND**

26    PHC has been in business in California for over 60 years.  *See* Declaration of
27 Mark Marinovich attached to Opposition to Plaintiff's Motion for Preliminary
28 Injunction (ECF Doc. #99) at ¶5.  PHC designs, develops, manufactures or has

1

1 manufactured a variety of safety knives primarily sold to grocery, retail and food
2 service businesses throughout the United States, Canada and Europe. *Id*. PHC
3 employs 40 people in Costa Mesa, California. *Id*.

4 PHC holds over 20 patents and has never been sued for patent infringement in
5 its 60 year history. *Id*. at ¶7. Indeed, one of the patents held by PHC protects the
6 design of the allegedly infringing product – PHC's RAZE ("RSC-432") Safety
7 Cutter. *Id*. The design of the RSC-432 is protected by U.S. Design Patent D557,079
8 issued by the United States Patent and Trademark Office ("USPTO") on
9 December 11, 2007. *Id*. A Notice of Allowance of a utility patent for the RSC-432
10 has also been received from the USPTO and issuance thereof is imminent. *Id*. at
11 Exh. T.

12 PHC first launched the RSC-432 in 2006. *Id*. at ¶10. Plaintiff did not file the
13 instant lawsuit until August 17, 2009 – approximately 3 years after PHC launched
14 the RSC-432. *Id*.

15 International Publication Number WO 2000/064646 is a publication of a
16 Patent Cooperation Treaty ("PCT") application filed April 17, 2000 and is based
17 upon priority application GB 9909317.1 filed April 23, 1999. WO 2000/064646 was
18 published on November 2, 2000.

19 U.S. Patent 6,718,640 is based upon application 10/031,249 which has a 35
20 U.S.C. § 371 (c)(1), (2), (4) date of October 30, 2001. The '640 patent issued April
21 13, 2004. The application is based upon PCT Application WO 2000/064646 and
22 claims priority from British patent application GB 9909317 filed April 23, 1999. *See*
23 Exhibit B to Dickie Decl., ¶3 (hereinafter "Exhibit B").

24 The German Patent G 89 12 929.6 was filed November 2, 1989 and published
25 February 8, 1990. *See* Exhibit C to Dickie Decl., ¶4 (hereinafter "Exhibit C"). The
26 English translation of German Patent G 89 12 929.6 was not available to the USPTO
27 during the examination of the '640 patent. *See* Exhibit D to Dickie Decl., ¶5
28 (hereinafter "Exhibit D").

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

2

1    U.S. Patent 2,376,887 ("the '887 patent" or "Walters") is based upon

2  application serial number 540,407 filed June 15, 1944. The '887 patent was issued

3  on May 29, 1945. *See* Exhibit E to Dickie Decl., ¶6 (hereinafter "Exhibit E").

4    U.S. Patent 2,730,800 ("the '800 patent" or "Bailey") is based upon

5  application serial number 439,584 filed June 28, 1954. The '800 application was

6  issued June 17, 1956. *See* Exhibit F to Dickie Decl., ¶7 (hereinafter "Exhibit F").

7    U.S. Patent 3,781,988 ("the '988 patent" or "Jones") is based upon application

8  serial number 284,607 filed August 29, 1972. The '988 patent was issued on

9  January 1, 1974. *See* Exhibit G to Dickie Decl., ¶8 (hereinafter "Exhibit G").

10   U.S. Patent 4,980,977 ("the '977 patent" or "Matin") is based upon application

11 serial number 462,923 filed on January 12, 1990. The '977 patent issued on

12 January 1, 1991. *See* Exhibit H to Dickie Decl., ¶9 (hereinafter "Exhibit H").

13   U.S. Patent 6,453,559 ("the '559 patent" or "Marshall") is based upon

14 09/59,600 filed March 6, 2000. The '559 application issued September 24, 2002.

15 The application claims priority from British application GB 9905122 filed March 6,

16 1999.

17 **III.    UNDISPUTED MATERIAL FACTS**

18   In accordance with Local Rule 56.1, Defendants have served and filed

19 herewith a Statement of Uncontroverted Facts and Conclusions of Law as to which

20 there is no genuine issue and that entitle Defendants to a judgment as a matter of law.

21 **IV.    ARGUMENT**

22 **A.    Summary Judgment of Invalidity Should be Granted Because The
23       '640 Patent Was Both Rendered Obvious and Anticipated**

24   Summary judgment is appropriate where there is no genuine issue of material

25 fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

26 56(c); *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1379 (Fed. Cir.

27 2005). Thus, summary judgment may be granted when no "reasonable jury could

28 return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

3

1  242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The standard for summary

2  judgment is no different in a patent case than in any other civil case.  *See Johnston v.*

3  *IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989).

4      The movant has the initial burden to inform the court of the basis for summary

5  judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d

6  265 (1986).  When the movant seeks summary judgment on a claim for which it does

7  not bear the burden of proof at trial, it may satisfy its initial burden in two ways.

8  First, it may present evidence negating one or more elements of the nonmoving

9  party's claim.  *Id.*  Alternatively, it may simply point out the absence of evidence to

10  support the nonmoving party's claim.  *Id.* at 2554.

11      If the movant makes the required initial showing, the burden shifts to the

12  nonmoving party to show by affidavits, depositions, answers to interrogatories,

13  admissions, or other evidence that summary judgment is not warranted because

14  genuine fact issues exist.  *See Celotex Corp.*, 106 S.Ct. at 2554.  In reviewing the

15  evidence, "the court must draw all reasonable inferences in favor of the nonmoving

16  party, and it may not make credibility determinations or weigh the evidence."

17  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147

18  L.Ed.2d 105 (2000).

19
20

    **B.**   **At Least Claims 1, 2 and 8 of U.S. Patent 6,718,640 Patent are
Invalid**

21      At least claims 1, 2 and 8 of U.S. Patent 6,718,640 are invalid due to prior art

22  that was not disclosed to or considered by the USPTO during the original prosecution

23  of the '640 patent (Exhibit B).  Specifically, at least claims 1, 2 and 8 of the '640

24  patent are invalid in view of German Patent G 89 12 929.6 (Exhibit C) and the

25  translation "Kahl" (Exhibit D), U.S. Patent 2,376,887 ("Walters") (Exhibit E), U.S.

26  Patent 2,730,800 ("Bailey") (Exhibit F), U.S. Patent 3,781,988 ("Jones") (Exhibit G),

27  or U.S. Patent 4,980,977 ("Matin") (Exhibit H).

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    While the German Patent G 89 12 929.6 (Exhibit C) is of record in the '640

2  patent (Exhibit B), the applicant did not provide the examiner with an English

3  translation of the Kahl patent (Exhibit D) or a concise explanation of relevance.

4  Instead, based on the prosecution history, the Examiner was only provided with the

5  original patent, which is written in German.  The translated body of the Kahl patent

6  (Exhibit D) would have been critical to the Examiner's analysis, especially given that

7  the limitations of claims 1, 2 and 8 are disclosed in the Kahl patent (Exhibit D).

8    The '640 patent (Exhibit B) recites subject matter directed to a cutting tool

9  having a blade and blade guard which is biased toward a safety position, but which

10  may be displaced for exposing the blade by bringing the tool into cutting contact

11  with a work piece.  The cutting tool includes a locking feature that requires that a

12  trigger be moved from a first position to a second position to release the blade guard

13  from the safety position.  The locking feature is such that each time the blade guard

14  is released from its safety position, it is displaced through a predetermined distance

15  and returns to its safety position.  In addition, the blade guard will become locked in

16  place regardless of the position of the trigger.  For example, independent claim 1

17  recites:

18      1.    A cutting tool comprising a blade and a member which is biassed
        towards a safety position in which the member forms a guard for the
19      blade, but which may be displaced to expose the blade by bringing the
        tool into cutting contact with a work piece, and a locking mechanism
20      having a trigger which must be moved from a first position to a second
        position to release the guard member from its safety position and
21      arranged such that each time the guard member is released from its
        safety position, the guard member is displaced through a predetermined
22      distance, and then returns to its safety position, the guard member will
        become locked in place regardless of the position of the trigger.
23

24    Claims 2 and 8 depend directly from independent claim 1 and recite further

25  limitations regarding the mechanisms of the cutting tool.  In particular, claims 2 and

26  8 recite:

27      2.    A cutting tool as claimed in claim 1, wherein the guard member is
        pivotally mounted to the tool.

28

HAMPTONHOLLEY LLP
2161 East Coast Highway, Suite 260
Corona del Mar, California 92625

5

8.     A cutting tool as claimed in claim 1, wherein the locking mechanism is arranged such that the guard member cannot be released from said safety position unless the tool is in contact with the workplace.

**C.     Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Invalid Under 35 U.S.C. § 102(a) and (b) in view of Kahl**

Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims limitations, it anticipates. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) (citing *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002)).  While anticipation is a question of fact, "it may be decided on summary judgment if the record reveals no genuine dispute of material fact."  *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

The Kahl patent (Exhibit D) is directed to an industrial knife, or "carpet knife," that includes a pivotally-mounted blade cover (14) that is biased toward a safety position by a spiral spring (16).  Unless the push button (20) is depressed, the blade cover is locked.  In Kahl (Exhibit D), the blade cover is released by means of a push button (20), which, when pressed, presses upon a transfer element (22) causing a catch (18) to rotate, which allows the blade cover to be lifted from its safety position by contact with a work piece.  If pressure is being applied to cutting material, the blade cover remains open and a cut can be made.  If the cutter is not in contact with cutting material, the transfer element (22) moves into a deeper recess (26) in the push button (20), the catch (18) rotates, and the blade cover (14) returns to the locked safety position.

The importance of German Patent G 89 12 929.6 (Exhibit C) is highlighted by the International Preliminary Examination Report (IPER) (Exhibit J), which stated that the invention lacked novelty in the view of the Kahl patent.  Specifically, the Authorized Officer found that Kahl already disclosed:

A cutting tool having a blade (12) and a member (14) which is biassed [SIC] towards a safety position in which the member forms a guard for the blade, but which may be displaced to expose the blade by bringing the tool into contact with a workpiece, and a locking mechanism having

6

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

a trigger (20) which must be moved from a first position to a second position to release the guard member from its safety position and arranged such that each time the guard member is released from its safety position, is displaced through a predetermined distance, and then returns to its safety position, the guard member will become locked in place regardless of the position of the trigger.

The Authorized Officer concluded that the subject matter of claim 1 of the '640 patent (Exhibit B) was therefore not new, and additionally found that claims 2 and 8 were also anticipated by German Patent G 89 12 929.6 (Exhibit C).

The elements of claims 1, 2 and 8 of the '640 patent are found in Kahl (Exhibit D) as shown in the following claim chart:

### U.S. Patent 6,718,640 and G 89 12 929.6 Claim Chart

| U.S. Patent 6,718,640 | Kahl G 89 12 929.6 |
|---|---|
| A cutting tool comprising a blade | Kahl has a blade 12 |
| and a member which is biassed towards a safety position in which the member forms a guard for the blade, | Kahl has a spring 16 which biases a blade guard 14 to the safety position |
| but which may be displaced to expose the blade by bringing the tool into cutting contact with a workpiece, | In Kahl, once the push button 20 has been depressed, pushing a work piece against the blade guard 14 will cause blade guard 14 to move |
| and a locking mechanism having a trigger which must be moved from a first position to a second position to release the guard member from its safety position | Kahl has a push button 20 which acts as the trigger. The blade guard 14 is locked until the push button 20 is depressed to move to a second position |
| the guard member will become locked in place regardless of the position of the trigger | In Kahl, when the push button 20 is depressed the pawl 18 is released, and then transfer member 22 moves into a deeper recess 26 on the push button 20 and when the cutter is removed from the work piece, the blade guard 14 snaps into the safety position even if the push button 20 remains depressed |
| and arranged such that each time the guard member is released from its safety position, the guard member is displaced through a predetermined distance, and then returns to its safety position | In Kahl, the push button 20 may be depressed a certain distance. Then the transfer member 22 moves into a deeper recess 26 on the push button 20 and when the cutter is removed from the work piece, the blade guard 14 snaps into the safety position. Thus, the blade guard 14 is displaced through a predetermined distance, and then returns |

7

| U.S. Patent 6.718.640 | Kahl G 89 12 929.6 |
|---|---|
| | to its safety position |
| the guard member will become locked in place regardless of the position of the trigger. | In Kahl, after the cut the guard snaps into a locked safety position regardless of the position of the trigger. |
| Claim 2. A cutting tool as claimed in claim 1, wherein the guard member is pivotally mounted to the tool. | Kahl has a blade guard 14 which is pivotally mounted to a center of rotation 30 |
| Claim 8. A cutting tool as claimed in claim 1, wherein the locking mechanism is arranged such that the guard member cannot be released from said safety position unless the tool is in contact with the workplace. | In Kahl, once the push button 20 has been depressed, pushing a work piece against the blade guard 14 will cause blade guard 14 to move |

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

As set forth above, the elements of claims 1, 2 and 8 of the '640 patent (Exhibit B) are met by Kahl (Exhibit D). Specifically, the elements of claim 1 include a blade. Kahl (Exhibit D) has a blade 12. The elements of claim 1 also include a blade guard biased towards a safety position. Kahl (Exhibit D) has a blade guard 14 which is biased toward a safety position by a spring 16. The elements of claim 1 also include the limitation that the blade guard may be displaced to expose the blade by bringing the tool into cutting contact with a work piece. Kahl (Exhibit D) has a push button 20 which may be depressed to release the blade guard 14. The blade guard may then be displaced by contact with a work piece (Figure 2). The elements of claim 1 also include a locking mechanism having a trigger which must be moved from a first position to a second position to release the guard member from its safety position and arranged such that each time the guard member is released from its safety position, the guard member is displaced through a predetermined distance, and then returns to its safety position, the guard member will become locked in place regardless of the position of the trigger. The cutter of the Kahl patent (Exhibit D) includes a locking mechanism that will automatically lock the blade cover (14) in the safety position when the blade (12) leaves the cutting material,

8

1  regardless of the position of the push button. When the push button (20) is
2  depressed, it can only be depressed to a certain point before the rotation of the catch
3  (18) will cause the transfer element (22) to move into the deeper recess of the push
4  button (26). If the cutter is not in contact with a work piece, the catch (18) will
5  rotate, and the guard will return to its original locked position. The transfer arm (22),
6  the catch (18), and the blade cover (14) will move through a predetermined path each
7  time the push button (20) is depressed.

8          Claim 2 adds the limitation that the blade guard be pivotally mounted to the
9  tool. In Kahl (Exhibit D), the blade guard 14 is pivotally mounted on the center of
10 rotation 30.

11         Claim 8 adds the limitation that the locking mechanism is arranged such that
12 the guard member cannot be released from said safety position unless the tool is in
13 contact with the workplace. The cutter of the Kahl patent (Exhibit D) includes a
14 locking mechanism that will automatically lock the blade cover (14) in the safety
15 position when the blade (12) leaves the cutting material, regardless of the position of
16 the push button. When the push button (20) is depressed, it can only be depressed to
17 a certain point before the rotation of the catch (18) will cause the transfer element
18 (22) to move into the deeper recess of the push button (26). If the cutter is not in
19 contact with a work piece, the catch (18) will rotate, and the guard will return to its
20 original locked position. The transfer arm (22), the catch (18), and the blade cover
21 (14) will move through a predetermined path each time the push button (20) is
22 depressed.

23         Accordingly, claims 1, 2 and 8 are rendered invalid by the Kahl patent
24 (Exhibit D) under 35 U.S.C. § 102 (a) and (b).

25
26 **D.    Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious
        Under 35 U.S.C. §103 by Kahl in view of Walters**

27         A claim is obvious if: "the differences between the subject matter sought to be
28 patented and the prior art are such that the subject matter as a whole would have been

1    obvious at the time the invention was made to a person having ordinary skill in the
2    art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a
3    question of law based on underlying questions of fact. *Winner Int'l Royalty Corp. v.*
4    *Wang*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). The underlying factual inquiries in an
5    obviousness analysis include: "(1) the scope and content of the prior art; (2) the level
6    of ordinary skill in the prior art; (3) the differences between the claimed invention
7    and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*,
8    175 F.3d 994, 998 (Fed. Cir. 1999).

9        Claims 1, 2 and 8 of the '640 patent (Exhibit B) are rendered obvious under 35
10   U.S.C. §103 by Kahl (Exhibit D) in view of Walters (Exhibit E). Walters (Exhibit E)
11   is directed to a package cutter with a covered blade. Figure 1 illustrates a guard (39)
12   which is pivotally mounted. (Column 2, Line 1). Figure 9 illustrates a blade guard
13   having an opening (58). A pivot screw goes through this opening. Accordingly, the
14   Walters patent (Exhibit E) discloses a pivotally mounted blade guard. (Page 2, Left
15   Column, Line 1). The blade guard is also numbered 43 and is biased into the safety
16   position by a spring (45). (Page 2, Left Column, Line 19). The blade guard (43) is
17   pushed back by the work piece, and returns to cover the blade cutter when the blade
18   is removed from the work piece.

19       Each of the limitations of claim 1 of the '640 patent (Exhibit B), including
20   those added by dependent claims 2 and 8, including the limitation that the blade
21   guard may be displaced to expose the blade by bringing the tool into cutting contact
22   with a work piece, are disclosed in the Kahl patent (Exhibit D). The limitation that
23   the blade cover be moved by contact with a work piece was well known at the time
24   of the invention of the '640 patent (Exhibit B). Another embodiment of a blade
25   cover being moved by pressure from the work piece is disclosed in the Walters
26   patent (Exhibit E). A person skilled in the art would be motivated to combine Kahl
27   (Exhibit D) with Walters (Exhibit E) because both patents are attempting to solve the
28   same problem of providing a safety cutter, and both patents are using a blade cover,

1   biased toward the blade covered position, to solve the problem.  A person skilled in
2   the art would arrive at the invention of the '640 patent (Exhibit B) simply by
3   combining known elements performing their known functions.  Therefore, the '640
4   patent (Exhibit B) is rendered obvious under 35 U.S.C. § 103 by Kahl (Exhibit D) in
5   view of Walters (Exhibit E).

6       **E.   Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious
7            Under 35 U.S.C. §103 by Kahl in view of Bailey**

8       Claims 1, 2 and 8 of the '640 patent (Exhibit B) are also rendered obvious
9   under 35 U.S.C. §103 by Kahl (Exhibit D) in view of Bailey (Exhibit F).  The Bailey
10  patent (Exhibit F) discloses a safety paper box cutter with a pivotally mounted "U"
11  shaped blade guard (10) (Column 2, Line 15), which is biased by a spring (12) so
12  that it covers the blade of the knife when not in use.  (Column 1, Lines 21 – 27).  The
13  blade guard moves out of the safety position when it is contacted with the work piece
14  and it returns to its safety position when the blade is removed from the work piece.

15      Each of the limitations of claim 1 of the '640 patent (Exhibit B), including
16  those added by dependent claims 2 and 8, including the limitation that the blade
17  guard may be displaced to expose the blade by bringing the tool into cutting contact
18  with a work piece, are disclosed in the Kahl patent (Exhibit D).  The limitation that
19  the blade cover be moved by contact with a work piece was well known at the time
20  of the invention of the '640 patent (Exhibit B).  Another embodiment of a blade
21  cover being moved by pressure from the work piece is disclosed in the Bailey patent
22  (Exhibit F).  A person skilled in the art would be motivated to combine Kahl (Exhibit
23  D) with Bailey (Exhibit F) because both the patents are attempting to solve the same
24  problem of providing a safety cutter, and both patents are using a blade cover, biased
25  toward the blade covered position, to solve the problem.  A person skilled in the art
26  would arrive at the invention of the '640 patent (Exhibit B) simply by combining
27  known elements performing their known functions.  Therefore, the '640 patent
28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

11

1   (Exhibit B) is rendered obvious under 35 U.S.C. § 103 by Kahl (Exhibit D) in view
2   of Bailey (Exhibit F).

3
4   **F.    Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Jones**

5       Claims 1, 2 and 8 of the '640 patent (Exhibit B) are also rendered obvious
6   under 35 U.S.C. §103 by Kahl (Exhibit D) in view of Jones (Exhibit G).  The Jones
7   patent (Exhibit G) is directed to a cutter with a pivotally mounted (abstract) blade
8   guard (G) which is biased by a spring (S) so that it covers the blade of the knife when
9   not in use.  (Column 1, Lines 58 – 59).  The blade guard moves out of the safety
10  position when it is contacted with the work piece and it returns to its safety position
11  when the blade is removed from the work piece.  (Column 1, Lines 20 – 33).

12      Each of the limitations of claim 1 of the '640 patent (Exhibit B), including
13  those added by dependent claims 2 and 8, including the limitation that the blade
14  guard may be displaced to expose the blade by bringing the tool into cutting contact
15  with a work piece, are disclosed in the Kahl patent (Exhibit D).  The limitation that
16  the blade cover be moved by contact with a work piece was well known at the time
17  of the invention of the '640 patent (Exhibit B).  Another embodiment of a blade
18  cover being moved by pressure from the work piece is disclosed in the Jones patent
19  (Exhibit G).  A person skilled in the art would be motivated to combine the Kahl
20  patent (Exhibit D) with the Jones patent (Exhibit G) because both patents are
21  attempting to solve the same problem of providing a safety cutter, and both patents
22  are using a blade cover, biased toward the blade covered position, to solve the
23  problem.  A person skilled in the art would arrive at the invention of the '640 patent
24  (Exhibit B) simply by combining known elements performing their known functions.
25  Therefore, the '640 patent is rendered obvious under 35 U.S.C. § 103 by Kahl
26  (Exhibit D) in view of Jones (Exhibit G).

27
28

12

### G.  Claims 1, 2 and 8 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. §103 by Kahl in view of Matin

Claims 1, 2 and 8 of the '640 patent (Exhibit B) are rendered obvious under 35 U.S.C. §103 by Kahl (Exhibit D) in view of Matin (Exhibit H).  The Matin patent (Exhibit H) is directed to a knife with a combination of safety features to prevent or minimize injury to an operator.  A safety guard covers the blade of the knife when not in use and is retracted when the blade is removed from a work piece.  The blade guard automatically locks upon return to its safety position, and is unlocked only by a manually triggered release assembly located in the grip of the knife.

Each of the limitations of claim 1 of the '640 patent (Exhibit B), including those added by dependent claims 2 and 8, are disclosed in the Matin patent (Exhibit H), except the limitation that the blade guard is displaced through a predetermined distance, and then returns to its safety position.  Kahl (Exhibit D) discloses this feature.  Matin (Exhibit H) discloses a blade (7) and safety guard (8), termed a "safety guard" in the Matin patent (Exhibit H), that is normally biased into the closed safety position (Column 1, Line 59 – 60) by torsion springs (10 and 25).  In particular, the retractable guard member (8) automatically retracts and covers the blade when the knife is removed from the work piece.  (Column 4, Lines 25 – 26).

The Matin patent (Exhibit H) also discloses a latching mechanism having a trigger that must be moved from a first position to a second position in order to release the guard member from the safety position.  In particular, the safety self-locking release trigger (17) must be manually engaged and pulled from a first to second position in order to move the locking pin (22) axially from its locking position.  Once the locking pin (22) is removed, the retractable guard member (8) is unlocked and able to be displaced from its safety position.

As the blade emerges from the work piece, the blade guard (8) automatically retracts and returns to a safety position.  (Column 4, Lines 25 – 28).  Once in its safety position, the guard member (8) will become automatically locked by the action

13

1  of the self-locking release assembly. (Column 4, Lines 24 – 28). This assembly

2  includes a locking pin (22), which is fastened to a coiled spring (20). (Column 4,

3  Lines 1 – 6).

4       The Matin patent (Exhibit H) also discloses the limitation of dependent claim

5  2 of the '640 patent (Exhibit B), i.e., a pivotally-mounted blade guard. Specifically,

6  the Matin patent (Exhibit H) discloses that its guard member (8) may be "pivoted"

7  (Column 4, Line 13) and is fastened to the knife body through threaded holes 11a

8  and 26a. (Column 3, Lines 56 – 57). It is also evident that the guard member (8) in

9  Matin (Exhibit H) is pivotally-mounted through its depiction in Figures 3, 3A, and

10  3B.

11       The Matin patent further discloses the limitation of dependent claim 8 of the

12  '640 patent (Exhibit B), which discloses a locking mechanism arranged such that the

13  blade guard is not released from its safety position unless the tool is in contact with a

14  work piece. Matin describes a locking mechanism wherein the release of the guard

15  member (8) from the safety position permits the upward movement of the guard

16  member (8), via guard flanges, as the blade is penetrated into and through the work

17  piece (Summary of Invention).

18       The latching mechanism in the Matin patent is not arranged such that each

19  time the blade guard (8) is released from its safety position, it is displaced through a

20  predetermined distance and then returns to its safety position. This feature is found

21  in the Kahl patent (Exhibit D). In the cutter of the Kahl patent (Exhibit D), push

22  button (20) can only be depressed to a certain point before the rotation of the catch

23  (18) will cause the transfer element (22) to move into the deeper recess of the push

24  button (26). If the cutter is not in contact with a work piece, the catch (18) will

25  rotate, and the guard will return to its original locked position. The transfer arm (22),

26  the catch (18), and the blade cover (14) will move through a predetermined path each

27  time the push button (20) is depressed. Thus, the blade cover moves a predetermined

28  distance every time the push button (20) is depressed.

14

1    A person skilled in the art would be motivated to combine Kahl (Exhibit D)

2   with Matin (Exhibit H) because both patents are attempting to solve the same

3   problem of providing a safety cutter, and both patents are using a blade cover, biased

4   toward the blade covered position, to solve the problem.  A person skilled in the art

5   would arrive at the invention of the '640 patent (Exhibit B) simply by combining

6   known elements performing their known functions.  Therefore, the '640 patent

7   (Exhibit B) is rendered obvious under 35 U.S.C. § 103 by Kahl (Exhibit D) in view

8   of Matin (Exhibit H).

9

10   **H.    Claims 3 and 4 of U.S. Patent 6,718,640 are Rendered Obvious Under 35 U.S.C. § 103 by Kahl in View of Marshall**

11    Kahl (Exhibit D) has been discussed in great detail above.  Figure 10 of U.S.

12   Patent 6,453,559 ("Marshall") (*see* Exhibit I to Dickie Decl., ¶10 (hereinafter

13   "Exhibit I")), shows a safety knife having blade guards 91 attached to a pivotally

14   coupled lever arm (a strut) which is biased by a spring 95.  The lever arm has a

15   second portion, this is, a projection 94 at the distal end.  The projection 94 moves in

16   and out of the recess in the disc 60 as the guard is raised and lowered by contact with

17   the work piece.  If the knife is held in the normal manner, the Projection 94 would

18   move in a vertical plane.  This reference (Exhibit I) combined with Kahl renders

19   obvious claims 3 and 4 of the '640 under 35 U.S.C. § 103.

20

21   **I.    Summary judgment of Non-Infringement Should be Granted Because the RSC-432 Does Not Infringe U.S. Patent 6,718,640**

22    A patent claim is infringed if a person "without authority makes, uses, offers

23   to sell, or sells any patented invention, within the United States or imports into the

24   United States any patented invention during the term of the patent therefor ...."  35

25   U.S.C. § 271(a).  Analysis of infringement involves a two-step process.  *Syntex*

26   *(U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1377 (Fed. Cir. 2005).  First, the court

27   must interpret the claim.  *Id.*  Claim construction is a matter of law for the court.

28   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 1396, 134

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    L.Ed.2d 577 (1996); *Syntex*, 407 F.3d at 1377.  Once the claim has been construed, it
2    must be compared to the allegedly infringing device.  *Syntex*, 407 F.3d at 1377.
3    Whether the accused device reads onto the properly construed claim is a question of
4    fact.  *Id.* at 1377-78.  The party asserting infringement bears the burden of proof.
5    *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed.
6    Cir. 2006).

7         An accused device may infringe a patent claim either literally or under the
8    doctrine of equivalents.  "Literal infringement of a claim exists when every limitation
9    recited in the claim is found in the accused device, i.e., when the properly construed
10   claim reads on the accused device exactly." *Cole v. Kimberly-Clark Corp.*, 102 F.3d
11   524, 532 (Fed. Cir. 1996).  If even one limitation is missing or not met as claimed,
12   there is no literal infringement.  *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d
13   1306, 1313 (Fed. Cir. 2003).  Summary judgment on literal infringement is proper
14   "when no genuine issue of material fact exists, in particular, when no reasonable jury
15   could find that every limitation recited in the properly construed claim either is or is
16   not found in the accused device." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164
17   (Fed. Cir. 2004).

18        "The doctrine of equivalents allows the patentee to claim those insubstantial
19   alterations that were not captured in drafting the original patent claim but which
20   could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo*
21   *Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 1838, 152 L.Ed.2d 944 (2002).  A
22   device infringes a patent claim under the doctrine of equivalents if it contains "each
23   limitation of the claim or its equivalent." *Eagle Comtronics, Inc. v. Arrow*
24   *Communication Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002) (citing *Warner-*
25   *Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1054, 137
26   L.Ed.2d 146 (1997)).  "An element in the accused product is equivalent to a claim
27   limitation if the differences between the two are 'insubstantial' to one of ordinary
28   skill in the art." *Id.*  The doctrine of equivalents must be applied to individual

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1 | elements of the claim, not to the invention as a whole. *Warner-Jenkinson*, 117 S.Ct.
2 | at 1049. The test for equivalence is whether the accused structure performs
3 | substantially the same function in substantially the same way to achieve substantially
4 | the same result as the claimed invention. *Id.* at 1054. Summary judgment of
5 | noninfringement under the doctrine of equivalents is appropriate if "no reasonable
6 | jury could determine two elements to be equivalent." *Leggett & Platt, Inc. v.*
7 | *Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir. 2002) (quoting *Warner-*
8 | *Jenkinson*, 117 S.Ct. at 1053 n.8).

9 | First, the "all limitations rule" provides that the doctrine of equivalents does
10 | not apply if the doctrine would vitiate an entire claim limitation. *Lockheed Martin*
11 | *Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). In other
12 | words, a device does not infringe if a claim limitation is "totally missing from the
13 | accused device." *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed.
14 | Cir. 2001). However, a "[o]ne-to-one correspondence of components is not
15 | required." *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d
16 | 1309, 1320 (Fed. Cir. 1998). Therefore, if separate claim limitations are "combined
17 | into a single element of the accused device," the accused device may still infringe
18 | under the doctrine of equivalents so long as the differences between the claim
19 | elements and the single element of the accused device are "insubstantial." *Eagle*
20 | *Comtronics*, 305 F.3d at 1317.

21 | Second, the doctrine of prosecution history estoppel prohibits the patent holder
22 | from asserting that certain subject matter is equivalent to a claim element if that
23 | subject matter was surrendered during the prosecution of the patent. *Id.* at 1315-16.
24 | The estoppel may be based on an argument made by the patent holder during
25 | prosecution in support of patentability, for example, to distinguish the claimed
26 | invention from a particular prior art reference. *Id.* at 1316 (citing *Elkay Mfg. Co. v.*
27 | *Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999)). If such an argument-based
28 | estoppel is found to apply to a particular claim limitation, it will apply to all claims in

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1  the same patent in which that limitation appears. *Id.* (citing *Southwall Techs., Inc. v.*
2  *Cardinal IG Co.,* 54 F.3d 1570, 1584 (Fed. Cir. 1995)). For argument-based
3  estoppel to apply, "the prosecution history must evince a 'clear and unmistakable
4  surrender of subject matter.'" *Id.* (quoting *Pharmacia & Upjohn Co. v. Mylan*
5  *Pharm., Inc.,* 170 F.3d 1373, 1377 (Fed. Cir. 1999)).

6    The RSC-432 does not infringe the '640 patent (Exhibit B) because no
7  component in the RSC-432 (Ex. T to ECF Doc. #99) functions in a manner that
8  satisfies the '640 patent's (Exhibit B) limitation that the guard member be "displaced
9  through a predetermined distance, and then returns to its safety position." The '640
10  patent (Exhibit B) requires that each time the guard member is released from its
11  safety position, the guard member is displaced through a predetermined distance.
12  The guard member then returns to its safety position, but will become locked in place
13  regardless of the position of the trigger. This means that on every use the blade
14  guard rises an exact amount and then returns to its locked safety position.

15    Unlike the '640 patent (Exhibit B), in the RSC-432 box cutter once the blade
16  guard has been released, it is free to move. (Ex. T to ECF Doc. #99) Figure 7 of
17  Plaintiff's Document 64 shows the RSC-432 box cutter in which the trigger has been
18  pushed forward, and the pawl 110 lifted free of the stop 124. It can readily be seen
19  that there is no pathway limiting the pawl 110 to travel a predetermined distance.
20  The blade guard 106 may be lifted by any amount and moved up and down without
21  restraint. Only when the knife is removed from the work does the pawl 110 drop
22  behind the stop 124 and lock the blade guard 106 in the closed position. The pawl is
23  not restrained, and the blade cover can move any distance and still return to its
24  locked safety position. Therefore, because the blade guard in the RSC-432 box
25  cutter is designed such that <u>any</u> distance traveled is sufficient to lock the blade guard
26  (Ex. T to ECF Doc. #99), it does not satisfy the "through a predetermined distance"
27  claim limitation of the '640 patent (Exhibit B). Accordingly, the RSC-432 box cutter
28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

18

1  is missing a necessary element of the '640 patent (Exhibit B) and does not infringe
2  the '640 patent.

3       Furthermore, the RSC-432 knife does not infringe claim 1 of the '640 patent
4  because the RSC-432 knife does not force the guard member to be displaced through
5  a predetermined distance each time it is released from its safety position. (Ex. T to
6  ECF Doc. #99)  Every claim which depends from claim 1 has all the limitations of
7  claim 1 and adds further limitations.  In the '640 patent, the claims which depend
8  from claim 1 are 2, 3, 4, 5, 6, 7, 8 and 9.  Accordingly, the RSC-432 knife does not
9  infringe claim 1, 2, 3, 4, 5, 6, 7, 8 and 9 of the '640 patent.  Claims 10 through 24 of
10 the '640 patent relate to a completely different embodiment of the invention, and are
11 not at issue in the present case.  Accordingly, there exists no infringement of Claim 1
12 of the '640 patent by the RSC-432 knife.

13 **V.    CONCLUSION**

14      For the foregoing reasons, Defendants respectfully request that the Court find
15 that the RSC-432 box cutter does not infringe the '640 patent; that claims 1, 2, 3, 4
16 and 8 of U.S. Patent 6,718,640 are invalid as a matter of law in view of the Kahl
17 patent and the Kahl patent in view of the Waters, Bailey, Jones, Matin and Marshall
18 patents; and grant summary judgment for Defendants.

19

Dated:  November 17, 2010          Dean A. Dickie
20                                  MILLER, CANFIELD, PADDOCK AND STONE,
                                    P.L.C.
21
                                    George L. Hampton IV
22                                  Colin C. Holley
                                    HAMPTONHOLLEY LLP
23

24                                  By:  /s/ Dean A. Dickie
25                                       Dean A. Dickie
                                    Attorneys for Defendants and Counterclaimants
26                                  PACIFIC HANDY CUTTER, INC., FRONT
                                    LINE SALES, INC. and STANLEY BLACK &
27                                  DECKER, INC.

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2101 East Coast Highway, Suite 260, Corona del Mar, California 92625.

On November 17, 2010, I served the within document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,718,640**

on the interested parties in this action as stated below:

**Robert J. Lauson**
**[E-mail address: bob@lauson.com]**
**Lauson & Tarver LLP**
**880 Apollo Street, Suite 301**
**El Segundo, CA 90245**

**William J. Brown, Jr.**
**[E-mail address: Bill@bwb-lawyers.com]**
**Brown, Wegner & Berliner LLP**
**2603 Main St. Suite 1050**
**Irvine, CA 92614**

[X]   **(BY ELECTRONIC MAIL)** I electronically mailed a true copy of the foregoing document to the email address as noted above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 17, 2010, at Corona del Mar, California.

_____          _____
            Colin C. Holley                                               
         (Type or print name)                             (Signature)

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

4824-4163-1239 - v. 1