# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA



## CIVIL MINUTES - GENERAL

Case No. SACV 09-951 DOC (Anx)            Date: May 12, 2011

Title: SPELLBOUND DEVELOPMENT GROUP, INC v. PACIFIC HANDY CUTTER, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT            NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING PLAINTIFF'S MOTION TO DISMISS, STAY, BIFURCATE OR SEVER DEFENDANT PACIFIC HANDY CUTTER INC.'S COUNTERCLAIM AND REQUESTING SUPPLEMENTAL BRIEFING

      Before the Court is Plaintiff's Amended Motion to Dismiss, Stay, Bifurcate or Sever Defendant Pacific Handy Cutter Inc. ("Defendant" or "PHC")'s Counterclaim (Docket 116 and Docket 158). The Court has considered the moving, opposing, and replying papers and DENIES the Motion but requests supplemental briefing as to how much time is needed for discovery so that Plaintiff can defend itself against the Counterclaim.

## I. Background

      This lawsuit arises out of Defendant PHC's alleged infringement of three patents owned by Plaintiff Spellbound Development Group, Inc. ("Plaintiff" or "Spellbound"). The patents concern cutting devices with certain safety features, including blade guards and locking mechanisms for blades that protect against unintended blade displacement. Spellbound represents that it is engaged in the sale of such safety cutters, as well as other safety-related products.

      The three patents are U.S. Patent Nos. 7,365,928, 7,726,029, and 6,178,640. Spellbound's initial complaint, filed on August 17, 2009, only alleged infringement of the '928 patent. On October 20, 2009, Spellbound filed a first amended complaint that added allegations of

infringement as to the '640 patent, following its purchase of that patent. On June 4, 2010, Spellbound filed a second amended complaint that added allegations that PHC infringed the '029 Patent, which issued on June 1, 2010. The gravamen of Spellbound's infringement claims is that a single product sold by PHC – the PHC-432 safety knife – infringes Spellbound's patents. On June 28, 2010, Spellbound moved to file a third amended complaint, which added new defendant Stanley Black & Decker, and, following the Court's granting of that motion, the Third Amended Complaint was deemed filed on September 1, 2010. On September 15, 2010, PHC answered, and added new counterclaims for patent mismarking, patent infringement, and false representation under the Lanham Act related to its Patent No. 7,774,942 (the "'942 Patent").

Spellbound had also moved for a preliminary injunction, which the Court denied on September 8, 2010. Spellbound also hoped for an accelerated trial schedule, and on September 28, 2011 requested that the trial be scheduled for mid-January 2011. On October 4, 2010, it also filed the original version of this Motion. On October 19, 2010, the Court set a December 7, 2010 trial date, which Defendants later opposed. There were several other adjustments to the trial date in light of Defendants' objections and the Court beginning a nearly four-month trial. As a result, the discovery cut-off was moved to May 27, 2011 and the trial was moved to August 23, 2011.

The '942 Patent was issued to PHC by the USPTO on August 17, 2010. Following the issuance of the patent, PHC determined that Spellbound infringed the '942 Patent through its XS-CU knife. It therefore added a counterclaim for infringement of this patent in response to Spellbound's Third Amended Complaint. In the present Motion, Spellbound moved to dismiss, stay, sever, or bifurcate that counterclaim as to the '942 patent from this case. The Court allowed the parties to amend their briefings related to this Motion (Docket 157), which the parties did. Accordingly, the Court considers the amended briefings.

## II. Discussion

### A. Motion to Dismiss

Spellbound first asks the Court to dismiss the counterclaim as untimely, arguing that PHC failed to comply with the Court's past scheduling order dictating the deadline by which to amend claims and failed to seek leave of the Court to amend. The counterclaim was added in response to Spellbound's Third Amended Complaint, which added Stanley Black & Decker as a defendant. Despite the fact that the Third Amended Complaint did not change the complaint as related to PHC, it nonetheless became the operative pleading. *See Pac. Bell Telephone Co. v. Linkline Com's, Inc.*, 129 S. Ct. 1109, 1123 n.4 (2009). Thus, it was reasonable for Defendants to assert a new counterclaim in their answer to the Third Amended Complaint. *See Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415 (D.Del. 1970) (concluding that a party need not seek leave to amend to assert counterclaims in response to an amended pleading, even though it had not previously raised such counterclaims).

Furthermore, Defendants could not have added the counterclaim to an earlier version of the complaint because the '942 patent had not been issued at the time of the prior versions of the complaint. Accordingly, the Court DENIES Spellbound's request to dismiss the Counterclaim as untimely.

### B. Motion to Stay

#### 1. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936). Whether to stay an action depends on a court's exercise of judgment in balancing potentially competing interests. *Id.* (citing *Kan. City S. Ry. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)).

Among those interests to be weighed are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Where separate proceedings relate to a case, "[a] trial court may . . . find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case . . . and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

The decision to grant a stay is within the sound discretion of the district court. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). Some of the advantages of a stay include the fact that the record of the reexamination may be entered at trial, that the PTO's expertise will govern; thus simplifying the case; that evidentiary and other issues will be further narrowed following a reexamination; and that costs will be reduced. *Ceiva Logic Inc. v. Frame Media Inc.*, 2009 WL 7844245 (C.D. Cal. 2009); *Guthy-Renker v. Icon Health & Fitness*, 48 USPQ2d 1058 (C.D. Cal. 1998).

#### 2. Application

Spellbound argues that the litigation should be stayed pending reexamination of the '942 patent. Spellbound filed its reexamination request of PHC's new '942 patent on the day the patent was issued, August 17, 2010, seeking to invalidate claims 26-39. The U.S. Patent & Trademark Office ("USPTO") granted the reexamination request in its entirety on October 7, 2010. Spellbound then filed the present motion as soon as possible following PHC's counterclaim.

Spellbound argues that it would have a very short time to conduct discovery related to this counterclaim given the upcoming trial date and discovery cut-off date.[1] Indeed, the Court is sensitive to Spellbound's concerns about forcing it to conduct relevant depositions prior to the upcoming discovery cut-off date. Defendants, however, argue that the fact that Spellbound filed its reexamination request on the same day on which the '942 patent was issued reveals that Spellbound knew of the patent and the arguments against it before it was even issued. They also accuse Spellbound of a lack of diligence in pursuing discovery on this issue. However, there is no evidence of any lack of diligence on the part of Spellbound, who have consistently tried to advance this case. Furthermore, the discovery hurdles faced by Spellbound will certainly factor in to their rush to defend against the counterclaim, given that the discovery cut-off date is just weeks away at this point.[2] Thus, the Court wishes to minimize any prejudice Spellbound may suffer as a result of the '942 counter-claim.

Defendants also insist that the '942 patent is related to the current lawsuit, arguing that it covers the mechanisms within the RSC-432 safety cutter knife in this lawsuit. They argue that Spellbound has already engaged in sufficient discovery related to the RSC-432 to be prepared to try the relevant counterclaim. But this overlooks the fact that the counterclaim adds in an entirely different patent to the case at a very late stage in the litigation process, and also adds in an entirely new product, the Spellbound Crew Safe CU knife. The Court agrees with Spellbound that it is therefore "misleading" to suggest, as Defendants do, that the new counterclaim does not involve new issues in the case but also recognizes the overlap in the issues involved. Thus, the Court believes it necessary–but also possible– to ameliorate "the hardship or inequity which [Spellbound] may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay" cut in favor of granting a stay of the counterclaim. *CMAX, Inc.*, 300 F.2d at 268. At the same time, "the possible damage [to PHC] which may result from the granting of a stay" will be significant, given that two separate trials may ultimately be necessary. *See id.* As much as the Court intends to minimize prejudice to Spellbound, it also will not impose undue prejudice on PHC by imposing a lengthy stay on its counterclaim.

The Court will therefore not issue a stay of the counterclaim, but also declines to stay the

---

[1] Though the trial date Spellbound anticipated at the time of its amended Motion was March 8, 2011, the Court did not request amended briefing to reflect the August 23, 2011 trial date. Nonetheless, the Court considers Spellbound's concerns about timing and modifies them in light of the adjustment to the trial schedule.

[2] The fact that Spellbound has already filed a Motion for Summary Judgment as to the '942 patent does not suggest that they have had sufficient discovery time. Rather, Spellbound was required to comply with motion cut-off dates and therefore had little choice but to file already. Thus, as described below, the Court will extend discovery and allow this Motion to be refiled at a later date.

entire case. Spellbound has consistently driven this case forward, and should not be further penalized by a stay as to the entire action. PHC did not even initially request a stay while its reexamination requests were pending. Furthermore, as mentioned above, Spellbound requested a reexamination of the '942 patent on the day the '942 patent was issued–before PHC had even raised its counterclaim. PHC, however, did not bring its reexamination immediately after the patent was issued, and waited until litigation in this matter had begun before bringing a reexamination request. Thus, to stay Spellbound's entire case because of PHC's reexamination request that was not issued prior to the litigation would be unduly prejudicial. Furthermore, Spellbound claims to be suffering ongoing harm from the alleged infringement–so much so that it brought a motion for a preliminary injunction. The Court therefore exercises its discretion in deciding not to stay the entire case. *See Ethicon, Inc.*, 849 F.2d at 1427.

After taking into account all of these considerations, the Court DENIES Spellbound's request to stay the counterclaim, and also declines to stay the entire case. However, because the Court wishes to minimize the prejudice to Spellbound, it will therefore extend the discovery cut-off date so that Spellbound can have adequate time to respond to the counterclaim. The Court requests that the parties, on or by May 16, 2011 at noon, notify the Court as to how much time is required to have adequate discovery for the '942 claim. The parties must submit no more than three (3) pages proposing an amended discovery cut-off date as to the '942 counterclaim, and any resulting necessary amendments to the case's scheduling order and trial timeline.

Accordingly, Plaintiff's Motion for Summary Adjudication as to the '942 claim (Docket 245) will be stricken, and can be refiled and noticed for a later hearing date, with a 30-page limit. The June 6, 2011 hearing on that Motion is vacated, but Defendants' three pending motions for summary judgment (Dockets 166, 161, and 170) will remain on calendar for that day.

### C. Motion to Bifurcate/ Sever

Rule 42(b) of the Federal Rules of Civil Procedure affords a court broad discretion to conduct separate trials of discrete issues or claims if it finds that such bifurcation would be "[f]or convenience, to avoid prejudice, or to expedite and economize. . . ." Fed. R. Civ. P. 42(b). The decision whether to exercise this discretion is made on a case-by-case basis. *See Bates v. United Parcel Svc.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) (citing *David & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985)).

The Court has the same concerns about bifurcation or severing the case as it does in staying the case. Two separate trials will be unduly consumptive of the Court's and the parties' resources, and will prejudice PHC in forcing it to conduct two trials. Furthermore, these issues are sufficiently related to justify one trial. Furthermore, given the Court's offer to extend discovery as to the '942 counterclaim, prejudice to Spellbound will be minimal and a bifurcated trial is unncessary.

### III. Disposition

For the reasons discussed above, the Court DENIES Plaintiff's Motion to Dismiss, Stay, Bifurcate, or Sever. The Court requests briefing from the parties, due by Monday, May 16, 2011 at noon, suggesting their proposals for a new discovery and motion cut-off date as to the '942 counterclaim only, as well as any necessary amendments to the trial schedule. Accordingly, Plaintiff's Motion for Summary Adjudication as to the '942 counterclaim (Docket 245) is STRICKEN as MOOT.

The Clerk shall serve this minute order on all parties to the action.