O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| SPELLBOUND DEVELOPMENT GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PACIFIC HANDY CUTTER et al., <br><br> Defendants. | Case No.: SACV 09-00951 DOC(ANx) <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 7,356,928; U.S. PATENT NO. 7,726,029; AND U.S. PATENT NO. 6,718,640  [269] |

Before the Court is Motion for Summary Judgment of Non-Infringement and Invalidity ("Motion") filed by Defendants Pacific Handy Cutter, Inc. ("PHC"), Front Line Sales, Inc., and Stanley Black & Decker, Inc. (collectively "Defendants").  (Dkt. 269).  After considering the moving papers and oral argument, the Court GRANTS IN PART and DENIES IN PART the Motion.

I.      **Background**

Plaintiff Spellbound Development Group, Inc. ("Plaintiff") alleges patent infringement by Defendants Pacific Handy Cutter, Inc. ("PHC"), Front Line Sales, Inc., and Stanley Black & Decker, Inc. (collectively "Defendants").  Plaintiff's patents concern cutting devices with certain safety features, including blade guards and locking mechanisms for blades that protect against unintended blade displacement.  The gravamen of Plaintiff's infringement claims is that a single product sold by PHC—the Razor Safety Cutter 432 ("RSC-432")—infringes Plaintiff's patents.

### a.  Plaintiff's internal email about Defendants' RSC-432

Prior to the present litigation, Defendants assert that Plaintiff's President stated in an internal email that Defendants' RSC-432 did not infringe Plaintiff's pending patents.  Sealed Mot. (Dkt. 275) 9.  Specifically, Plaintiff's President stated in an email that "we are well aware of their design and have run it by our IP attorneys" and the device does "not infringed on [Plaintiff's] patents or pending patents."  Sealed Mot. (Dkt. 275) 9.  Defendants assert that "their design" referred to Defendants' RSC-432.  *Id.*

### b.  Plaintiff's original complaint, amendments, and attempted amendments

Plaintiff's initial complaint, filed on August 17, 2009, alleged infringement of only one patent: U.S. Patent No. 7,365,928 ("'928 patent").

On October 20, 2009, Plaintiff filed a first amended complaint that added allegations of infringement of U.S. Patent No. 6,178,640 ("'640 Patent"), which Plaintiff had just purchased.

On June 4, 2010, Plaintiff filed a second amended complaint that added allegations that PHC infringed the U.S. Patent No. 7,726,029 ("'029 Patent"), which issued on June 1, 2010.

On June 28, 2010, Plaintiff moved to file a third amended complaint, which added new defendant Stanley Black & Decker, and, following the Court's granting of that motion, the Third Amended Complaint was deemed filed on September 1, 2010.  (Dkt. 105)  On September 15, 2010, PHC answered, and added new counterclaims related to one of its patents, specifically patent mismarking, patent infringement, and false representation under the Lanham Act.

A year later, on June 20, 2011, the Court denied Plaintiff's ex parte application to amend its complaint.  (Dkt. 260).

On July 1, 2011, a little more than a week after the Court denied Plaintiff leave to amend, Plaintiff again moved to amend its complaint. This time Plaintiff sought to add the newly-issued U.S. Patent No. 7,966,732 ('732 Patent), which Plaintiff averred was substantially similar to the '029 Patent. (Dkt. 261) The PTO had issued the '732 Patent on June 28, 2011. *Id.* The proposed Fourth Amended Complaint did not contain any reference to Claim 2 of the '928 Patent as a basis for Plaintiff's infringement theory. *See id.*

On August 9, 2011, the Court denied Plaintiff's motion to amend.[1] (Dkt 274).

### c.  This Court's case management orders

Prior to February 7, 2011, the parties filed summary judgment motions. (Dkts. 237, 238). However, the Court's trial calendar required that trial be rescheduled, and thus the Court struck these motions. (Dkts. 237, 256).

On May 17, 2011, this Court finalized the deadlines for this case as follows (Dkt. 256):

- Discovery Cut Off: July 27, 2011
- Motion Cut off/Deadline for Filing Summary Judgment Motions: August 8, 2011
- Deadline for Opposition Briefing: August 29, 2011
- Final Pretrial Conference: November 14, 2011
- Jury Trial (9 days): November 29, 2011

### d.  Plaintiff's attempt to amend its complaint through supplemental discovery answers

During discovery, Defendants issued interrogatories requesting identification of each allegedly infringed patent claim and Plaintiff answered with specific claim numbers. On August 8, 2011, when Defendants filed for summary judgment, Plaintiff's answers to Defendants'

---

[1] In Plaintiff's own motion for summary judgment, not otherwise addressed in this Order, Plaintiff urged this Court to rule on Plaintiff's motion for leave to amend its complaint to add the '732 Patent. *See* Dkt. 270 at 1 n.1. Although Plaintiff did not cite a docket number, the Court assumes that Plaintiff was referring to the motion that the Court denied on August 9, 2011.

interrogatories were as follows: (1) Claim 9 of the '928 Patent; (2) Claims 1 through 5 of the '029 Patent; and (3) Claims 3 and 4 of the '640 Patent.  *See* Lauson Decl. (Dkt. 284) Ex. A (Claim 9 of the '928 Patent), Ex. B (Claims 3 and 4 of the '640 Patent); Dickie Decl. (Dkt. 266-1) Ex. J at 143 (Claims 1 through 5 of the '029 Patent).

On August 18 and 19, 2011—10 days *after* Defendants' Summary Judgment motion was due and four weeks after discovery ended—Plaintiff filed supplemental answers to Defendants' interrogatories.  *See* Lauson Decl. (Dkt. 284) Ex. A, Ex. B.  Plaintiff added the following bases for infringement: (1) Claim 2 of the '928 Patent; and (2) Claims 25 through 27 of the '640 Patent.  Lauson Decl. (Dkt. 284) Ex. A, Ex. B.

### e.  Plaintiff's statements to the PTO regarding the '029 Patent

During at least part of the present litigation, Plaintiff's '029 Patent was also subjected to accelerated reexamination by the PTO.  Claim 5 of the '029 Patent was not subject to reexamination.  However, during reexamination of Claims 1 through 4 of the '029 Patent claims, Plaintiff stated that:

> Claim 5 . . . further limits claim 4 by requiring rotation of the
> blade cover to cause the pawl to travel along the trigger pathway.
> Although causing a rod or strut to move due to pivoting a blade
> cover is considered known per se, it is not considered known
> within the bounds of the claims 4 and 1.  Claim 5 is considered
> not have separate patentability outside the scope of claims 4 or 1.

Dickie Decl. (Dkt. 266-1) Ex. C 33-34 (quotation from Plaintiff's Amended Accelerated Examination Support Document).

Plaintiff also repeatedly distinguished the '029 Patent from prior art by arguing before the PTO that only the '029 patent disclosed a "trigger pathway."  *See* Dickie Decl. (Dkt. 266-1), Ex. C at 31.

### f.  Relevant limitations in the allegedly infringed patent claims and Defendants' RSC-432

#### i.  Claim 5 of the '029 Patent

Claim 5 of the '029 Patent discloses a knife with the limitation "wherein rotation of the blade cover cause[s] the **travel of . . . at least a portion of the pawl along the trigger pathway**."

### ii.   Claim 3 of the '640 Patent

Claim 3 of the '640 Patent discloses a knife with the limitation "wherein the locking action of the cutting tool is provided by a **strut** which is pivotally **joined to the guard member**, the distal end of the **strut being arranged to follow a loop**."  Dickie Decl. (Dkt. 266-2) Ex. K at 232, col. 7, ll. 54-57.

### iii.   Claim 4 of the '640 Patent

Claim 4 of the '640 Patent incorporates Claim 3, and thus contains the same limitation. *See Id.* at 232, col. 7, ll. 58-59.  In addition, Claim 4 and the Summary of the Invention contain identical language; both describe a device wherein "the strut is arranged to **pivot in a vertical plane**."  Dickie Decl. (Dkt. 266-2) Ex. K at 229, col. 1, ll. 61-65; Ex. K at 232, col. 7, ll. 58-59.

### iv.   Defendants' RSC-432

Defendants and their expert concede that, like in Claims 3 and 4 of the '640 Patent, the RSC-432 has a "strut/pushrod" with a "distal end."  *See* Dickie Decl., Ex. Q at 368.

Defendants and their expert concede that, like in Claim 5 of the '029 Patent, the RSC-432 has a pawl and an "opening through which a pawl passes."  *See* Visser. Decl. at 19:4-5 ("I accept that the pushrod could also be described as a pawl"); 20 at 4-6.

In Figure 15 of Plaintiff's expert report, there is an area on the RSC-432 at 108, identified as a "Trigger," and an opening within this area at 138, identified as a "Pathway."  *See* Dickie Decl. (Dkt. 266-2) Ex. O at 283.

### g.   Defendants' present Motion

On August 8, 2011, Defendants filed for of Non-Infringement and Invalidity on the '029 and '640 Patents.  (Dkt. 269).  The present Motion raises the following issues:

- **Which patent claims may form the bases for Plaintiff's infringement theories for purposes of summary judgment**.  The parties dispute whether Plaintiff can now assert

infringement based on: (1) Claim 2 of the '928 Patent; and (2) Claims 25 through 27 of the '640 Patent.

- **<u>Whether two of the patent claims are invalid</u>**.  Defendants argue that invalidity is shown because: (1) Claim 5 of the '029 Patent is obvious, shown by Plaintiff's statement to the PTO that Claim 5 is composed of other known claims; and (2) Claim 4 of the '640 Patent fails to describe the invention in a manner understandable to a person skilled in the art.

- **<u>Whether three of the patent claims are not infringing</u>**.  Defendants argue that non-infringement is shown because: (1) Claim 5 of the '029 Patent should be construed narrowly to disclose only a "pawl that rides in a loop located on the trigger" and Defendants' RSC-432 knife lacks a loop or any pawl pathway on the trigger; (2) Claims 3 and 4 of the '640 Patent should be construed narrowly to disclose only a device that has "guide channels and lugs," and Defendants' RSC-432 knife lacks such guide channels and lugs; and (3) Plaintiff's President stated in an internal email that Defendants' RSC-432 did not infringe Plaintiff's pending patents, and Claims 3 and 4 of the '640 Patent were pending or in existence at the time the email was sent.

## II.    Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806-07 (Fed. Cir. 1999).

1    Once the moving party meets its burden, the opposing party must set out specific facts

2    showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is

3    insufficient.  *See Anderson,* 477 U.S. at 248-49.  A party cannot create a genuine issue of

4    material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio*

5    *Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there

6    must be specific, admissible evidence identifying the basis for the dispute.  *Id.*  The Supreme

7    Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there

8    must be evidence on which the jury could reasonably find for [the opposing party]."  *Anderson*,

9    477 U.S. at 252.

10   **III.    CLAIMS UNDER DISPUTE**

11        The parties dispute whether Plaintiff is barred from asserting new patent claims because

12   the summary judgment motion and discovery deadlines have passed and Plaintiff, in its

13   interrogatory answers, previously identified the eight patent claim numbers on which its

14   infringement theory was based.  Specifically, the parties dispute whether Plaintiff can now assert

15   infringement based on: (1) Claim 2 of the '928 Patent; and (2) Claims 25 through 27 of the '640

16   Patent.  The parties do not dispute that, at the time Defendants filed for summary judgment,

17   Plaintiff had only asserted that Defendants infringed: (1) Claim 9 of the '928 Patent; (2) Claims

18   1 through 5 of the '029 Patent; and (3) Claims 3 and 4 of the '640 Patent.

19        Neither party cited any law in its briefs in favor of its position.  Defendants only

20   addressed the issue in their Reply and Plaintiff did so for the first time at oral argument.  After

21   conducting its own research and reviewing the single citation provided at oral argument, the

22   Court concludes that Plaintiff's infringement theory is limited to those claims identified in its

23   interrogatories on the date Defendants filed for summary judgment.

24        **a.   Plaintiff is bound by its interrogatory answers because it did not act with**

25        **diligence in updating its theories of infringement for the '928 and '640**

26        **Patents**

27        A court may impose any just sanction for the failure to obey a scheduling order, including

28   "refusing to allow the disobedient party to support or oppose designated claims or defenses, or

prohibiting that party from introducing designated matters in evidence."  Fed. R. Civ. P. 16(f); *see also* Fed. R. Civ. P. 37(b)(2)(B); *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006).  Both the Ninth and Federal Circuit have held that the "exclusion of evidence is often an appropriate sanction for the failure to comply with [case management] deadlines," including deadlines for disclosure of patent infringement theories.[2]  *O2 Micro*, 467 F.3d at 1369; *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (no abuse of discretion to exclude evidence pertaining to theories of claim construction and infringement not disclosed as required by the local patent rules and the court's scheduling order); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.").

In *O2 Micro*, the Federal Circuit upheld summary judgment in favor of the defendant for patent infringement because the plaintiff failed to show that it diligently updated its infringement contentions, and thus the lower court did not err in refusing to let plaintiff amend its infringement theory or supplement its expert report.  467 F.3d at 1363.  The court reasoned that the plaintiff did not act with diligence because it delayed amending its infringement theory for three months after the deposition which revealed new facts that were the basis for the updates.  *Id.* at 1362.  The court concluded that the plaintiff lacked diligence because the

---

[2] Although Federal Circuit law would appear to apply here, this Court need not resolve whether Ninth or Federal Circuit law applies because the Circuits do not differ on this issue.  *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part) ("[A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction.").

deadline for updating its theory was "explicitly included in a . . . case management order." *Id.* at 1362. Plaintiff lacked diligence even though the penalty imposed for failing to follow the deadline was "not specif[ied]" prior to being imposed and even though discovery was not yet complete at the time plaintiffs updated their infringement theory. *See id.* 1362; *compare id.* at 1359 (expert discovery extended until June 30) *with id.* at 1361 (plaintiff's motion to update infringement theory on June 6).

As in *O2 Micro*, Plaintiff here has demonstrated a lack of diligence in updating its infringement theory. Plaintiff's theory of liability based on the post-examination Claim 2 of the '928 Patent —specifically, the theory that Defendants infringed Plaintiff's utility knife "wherein the pawl hinges on the blade guard"—has been available to Plaintiff for the entire duration of this suit. This theory of liability was available previously because Claim 2 of the post-examination '928 simply combines, verbatim, the language of Claims 1, 2, and 9 of the pre-examination '928 Patent.[3] *Compare* Dickie Decl. (Dkt. 266-2) Col. 5, ln. 30-40 (Claim 1); Col. 5, ln. 41-42 (Claim 2); Col. 6, ln. 8-9 (Claim 9) *with* McCarthy Decl. (Dkt. 282) ¶ 31. Indeed, to support Plaintiff's contention that Defendants would suffer no prejudice if Plaintiff updated its interrogatories to include Claim 2, Plaintiff at oral argument stated that Claim 2 added "nothing substantive" and has "been in this case for a long time." Furthermore, Plaintiff was aware that of the existence of its post-examination Claims 25 through 27 of the '640 Patent well before discovery cut-off dates because Plaintiff was litigating these Claims before the PTO. The Court permitted Plaintiff to amend its Complaint *several* times over the course of *eleven months*, and during each amendment Plaintiff never once specified these new claims as bases for its infringement theory. Finally, as in *O2 Micro*, this Court's case management order explicitly identified cut-off dates of July 27, 2011, for discovery and August 8, 2011, for summary

---

[3] Alternatively, Plaintiff is likely estopped from arguing post-examination Claim 2 because "the rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel." *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004).

judgment motions.  Yet Plaintiff filed their supplemental answers to Defendants' interrogatory on August 18 and 19, 2011—10 days *after* Defendants' present Motion for Summary Judgment was due and four weeks after discovery ended.

At oral argument, Plaintiff contended that *Acer, Inc. v. Technology Properties* supported Plaintiff's position that it acted with diligence in updating its discovery interrogatories.[4] However, that case is distinguishable from the present case.  The May 2011 *Acer* decision noted that the movant, which sought leave to amend its infringement theories, had "kept [non-movants] abreast of developments in [the reexamination] process until it became clear which claims would emerge and in what form."  *Acer, Inc. v. Tech. Props.*, 2011 U.S. Dist. LEXIS 55774, at *10 (N.D. Cal. May 13, 2011).  In contrast, as Defendants noted at oral argument, Plaintiff failed to inform even *this Court* that Plaintiff's patent was undergoing reexamination which could lead to new theories of infringement.  Furthermore, the May 2011 *Acer* decision noted that the case was "in its early stages."  *Id.* at *9.  In contrast, here the case was in the *last* stage before trial—discovery had closed and summary judgment motions had been filed—when Plaintiff updated its discovery interrogatories.  Thus, the Court is not persuaded that *Acer* is analogous to this case.

---

[4] At oral argument, Plaintiff provided only the *Acer* case name, judge, and case number 08-877. Interestingly, there are *two* decisions regarding diligence with the title *Acer, Inc. v. Technology Properties*—and only one of which granted leave to amend.  In a September 2010 decision, the *Acer* court *denied* the movant leave to amend its infringement contentions due to lack of diligence.  *Acer, Inc. v. Tech. Props.* (*Acer I*), 2010 U.S. Dist. LEXIS 142472, at *16-18 (N.D. Cal. Sept. 10, 2010).  There, the amendments were not diligently sought even though they were filed four months *before* the discovery cut-off.  *Compare id*, at *9 (discovery cut-off of October 19, 2010) *with id.* at *6 (proposed amendments served on May 21, 2010, and June 22, 2010). This case is an even stronger one for finding a lack of diligence because here Plaintiff updated its discovery interrogatories *after* discovery closed and summary judgment motions were filed.

In sum, Plaintiff is bound by its interrogatories as of the date Defendants filed their summary judgment motion because Plaintiff did not demonstrate diligence in updating its interrogatories.  The Court concludes that Plaintiff's infringement theory is thus limited to: (1) Claim 9 of the '928 Patent; (2) Claims 1 through 5 of the '029 Patent; and (3) Claims 3 and 4 of the '640 Patent.  *See also Hologic, Inc. v. Senorx, Inc.,* 2009 U.S. Dist. LEXIS 130693, at *53 (N. D. Cal. 2009) (granting defendant summary judgment for non-infringement because it suffered prejudice by plaintiff's failure to "disclose a theory of infringement until after the claim construction, the close of fact and expert discovery, and opening summary judgment briefs").

> **b.  Defendants are entitled to summary judgment on Plaintiff's cancelled and rejected patent claims, leaving only Claim 5 of the '029 Patent and Claims 3 and 4 of the '640 Patent**

A defendant is entitled to summary judgment on patent claims cancelled or rejected by the PTO.  *See O2 Micro*, 467 F.3d at 1369 ("Since [Plaintiff's] infringement contentions were limited to [one] theory and [Plaintiff] failed to timely provide evidence in support of that theory, the district court did not err in granting summary judgment.").

Thus, the Court GRANTS Defendants summary judgment on Plaintiff's cancelled or rejected patent claims, specifically: (1) Claim 9 of the '928 Patent; and (2) Claims 1 through 4 of the '029 Patent.  See Sealed Mot. 2.  Plaintiff's only remaining bases for infringement are based on: (1) Claim 5 of the '029 Patent; and (2) Claims 3 and 4 of the '640 Patent.[5]

### IV.   DEFENDANTS' INVALIDITY ARGUMENTS

Defendants argue that two of the three remaining claims are invalid because: (1) Claim 5 of the '029 Patent is obvious, shown by Plaintiff's statement to the PTO that Claim 5 is

---

[5] Although Claim 5 of the '029 Patent incorporates Claims 1 and 4, the PTO's rejection of the incorporated claims does not *per se* invalidate Claim 5.  *See* 35 U.S.C. § 282.  In addition to the incorporated claims, Claim 5 discloses the limitation "wherein rotation of the blade cover cause[s] the travel of . . . at least a portion of the pawl along the trigger pathway."  Dickie Decl. (Dkt. 266-1) Ex. B Col. 10, ll. 4.

composed of other known claims; and (2) Claim 4 of the '640 Patent fails to describe the invention in a manner understandable to a person skilled in the art.  Because Claim 5 of the '029 Patent and Claim 4 of the '640 Patent were issued and thus are presumably valid, their invalidity must be shown by clear and convincing evidence.  *See* 35 U.S.C. § 282; *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007).

### a.   Plaintiff's statement to the PTO are inadequate to show that Claim 5 of the '029 Patent is invalid as a matter of law

Claims which would be obvious to a person having ordinary skill in the art are not patentable.  35 U.S.C. § 103; *Takeda Chemical*, 492 F.3d at 1355.  However, a patent composed of several elements is not necessarily obvious merely because each of its elements was independently known to a person having ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

The Court provides the rule stated above because neither party offers any authority for its legal argument.  Defendants contend that Plaintiffs can not defend the validity of Claim 5 of the '029 Patent before this Court because Plaintiff stated to the PTO during its reexamination of the '029 Patent that Claim 5: (1) disclosed an additional limitation that was "known"; and (2) did "not have separate patentability outside the scope of claims 4 or 1."[6]  Sealed Mot. (Dkt. 275) 6-7.  Plaintiff responds by asserting that a claim comprised entirely of combinations of unpatentable claims may nonetheless be patentable.  Because Defendants cite no legal authority

---

[6] Plaintiff's statement to the PTO is produced in full here: "Claim 5 . . . further limits claim 4 by requiring rotation of the blade cover to cause the pawl to travel along the trigger pathway. Although causing a rod or strut to move due to pivoting a blade cover is considered known per se, it is not considered known within the bounds of the claims 4 and 1.  Claim 5 is considered not have separate patentability outside the scope of claims 4 or 1."  Dickie Decl. (Dkt. 266-1) Ex. C 33-34 (Quotation from Plaintiff's Amended Accelerated Examination Support Document).

and contrary authority exists, Defendants have failed to show invalidity as a matter of law and by clear and convincing evidence.[7]

Plaintiff's statement to the PTO is insufficient to establish invalidity.  Plaintiff stated before the PTO that "Claim 5 is considered not have separate patentability outside the scope of claims 4 or 1."  Dickie Decl. (Dkt. 266-1) Ex. C 33-34.  However, Plaintiff also clarified that the portion of Claim 5 which was already "known"—namely, that the device's movement is "due to pivoting a blade"—is "not considered known within the bounds of the claims 4 and 1."  *Id.*  At worst, Plaintiff's statement is a concession that Claim 5 is composed of "known" elements, specifically Claims 1, 4, and movement "due to pivoting a blade."  But because a patent is not invalid merely because each of the patent's elements is known, Plaintiff's statement does not show that Claim 5 is invalid as a matter of law.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

Thus, Defendants' motion for summary judgment of invalidity on Claim 5 of the '029 Patent is DENIED.

### b. Claim 4 of '640 Patent's disclosure of a "vertical" plane is understandable as described by the specification and thus not invalid as a matter of law

A patent claim is invalid, and thus summary judgment favoring a defendant is proper, where the patent's specification fails to describe an invention understandable to a person skilled in the art.  *See* 35 U.S.C. § 112 ¶ 1; *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

Defendants argue that the specification of the '640 Patent fails to describe the invention in Claim 4 in a manner understandable to a person skilled in the art.  Claim 4 and the Summary of the Invention of the '640 Patent contain identical language; both describe a device wherein

---

[7] Plaintiff devotes several Opposition pages to dsitinguishing Claim 5 from prior art.  However, Defendants correctly note that Plaintiff's arguments regarding prior art are "irrelevant" because Defendants do not argue that Claim 5 is obvious in view of prior art.  Reply (Dkt. 299) 6.

"the strut is arranged to **pivot in a vertical plane**."  Dickie Decl. (Dkt. 266-2) Ex. K at 229, col. 1, ll. 61-65; Ex. K at 232, col. 7, ll. 58-59.  Defendants contend that the phrase "pivot in a vertical plane" is too "unclear" to be understandable because: (1) the "ordinary meaning" of the word "vertical" is "**perpendicular to the plane of the horizon**"; and (2) because the device at issue "may be turned," any plane can become perpendicular to the horizon.  Sealed Mot. 8.  Defendants cite no authority for this horizon-based definition of the word "vertical."

The Court rejects Defendants' definition of vertical because it is both unsupported by authority and inexplicably narrow.  As Plaintiff notes, "vertical" may be understood by a person skilled in the art to mean "perpendicular to . . . *a primary axis*."  Opp'n 11.  Plaintiff argues that, here, the primary axis is the long base of the knife; thus "vertical" can be understood as "perpendicular to" the base of the knife.  Indeed, this definition is manifest in Figure 3, where drawings of the '029 Patent show the base of the knife at 30.  Dickie Decl. (Dkt. 266-2) Ex. K at 224.  Given that Defendants offer no authority for its definition of "vertical" and this definition seems inexplicably narrow in light of the figures provided in the '640 Patent, the Court rejects Defendants' argument of invalidity.

Thus, Defendants' motion for summary judgment of invalidity on Claim 4 of the '640 Patent is DENIED.

## V.      DEFENDANTS' INFRINGEMENT ARGUMENTS

Patent infringement analysis involves two steps: (1) claim construction, that is, an interpretation of the asserted claims, and (2) a comparison of the claims to the allegedly infringing device.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996).  Claim interpretation is a matter of law for the Court.  *Markman*, 52 F.3d at 979.  An infringement analysis is amenable to summary judgment, even though the analysis involves both issues of law and questions of fact, if the court finds that there are no genuine issues of material fact.  *Phonometrics Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1463-64 (Fed. Cir. 1998).

The parties dispute claim construction for both Claim 5 of the '029 Patent and Claims 3 and 4 of the '640 Patent.  First, regarding Claim 5 of the '029 Patent, the parties dispute whether

the prosecution history of the '029 Patent requires the Court to narrowly construe the Claim. Second, regarding Claims 3 and 4 of the '640 Patent, the parties dispute whether the Claims should be construed to require certain elements in the specification and embodiment which are absent in the Claims themselves.  Because the Court rejects Defendants' constructions of these Claims, and Defendants' infringement arguments depends on these rejected constructions, the Court DENIES Defendants summary judgment.

### a.  Legal Standard

#### i.  Claims are given their ordinary meanings

Regarding the first step—claim construction—the terms in the patent claim are given the ordinary meaning they would have to a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  In interpreting the claims, the court focuses primarily on the intrinsic evidence of record, including the claims themselves, the specification, and if in evidence, the prosecution history. *Id.* at 1312-17.  Among the intrinsic evidence, the specification is always highly relevant to the claim construction analysis—it is the single best guide to the meaning of a disputed term, and is usually dispositive.  *Id.* at 1315 ("The specification is, thus, the primary basis for construing the claims.").  In addition to the specification, the court will also consider the prosecution history. *Id.* at 1317.  However, because the prosecution history often lacks the clarity of the specification, it is less useful for claim interpretation purposes.  *Id.*  While the court may also consider extrinsic evidence, including expert testimony, dictionaries, and learned treatises, such evidence is generally viewed as less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1317-18.

#### ii.  Infringement exists where the allegedly infringing device contains all the substantially same elements as those in the patent claims

Regarding the second step—comparison of the claims to the allegedly infringing device—a device may infringe literally or under the doctrine of equivalents.

Summary judgment of non-infringement under the theory of literal infringement is proper when "no reasonable jury could find" that the accused device contains *every* limitation in the allegedly infringed claim. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1163 (Fed. Cir. 2004).

Summary judgment of non-infringement under the doctrine of equivalents is appropriate if "no reasonable jury could determine two elements to be equivalent." *Id.* at 1164. However, under the doctrine of equivalents, a device infringes if it "performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." A*quaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005); *Festo v. Shoketsu Kinzoku Kogyu Kabushiki*, 535 U.S. 722, 730, 122 S. Ct. 1831 (2002) (a device infringes even if it contains "insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes").

### b. Defendants have failed to show as a matter of law that their RSC-432 knife does not infringe Claim 5 of the '029 Patent

Defendants contend that they are entitled to summary judgment regarding infringement of Claim 5 of the '029 Patent because: (1) Claim 5 should be construed narrowly to disclose only a "pawl that rides in a loop located on the trigger"; and (2) Defendants' RSC-432 knife lacks a loop or any pawl pathway on the trigger. *See* Sealed Mot. (Dkt. 275) 12.

#### i. The Court construes Claim 5 as disclosing a *pathway in the trigger*

The doctrine of argument-based prosecution history estoppel bars a patentee from later arguing a broader claim construction where the patentee previously argued a narrower claim construction before the PTO to distinguish the claim from prior art, even if the claim was not actually amended. *See American Piledriving Equipment, Inc v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996) (holding that patent claims were narrowed after reexamination to exclude briefs with bonded seams because patentee in reexamination distinguished prior art disclosing bonded seams). However, such estoppel applies only if the patentee's argument before the PTO constituted a

"clear and unmistakable surrender" of the broader claim construction. *Eagle Comtronics, Inc. v. Arrow Commun. Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002).[8]

Claim 5 of the '029 Patent discloses a knife with the limitation "wherein rotation of the blade cover cause[s] the **travel of . . . at least a portion of the pawl along the trigger pathway**."

Defendants appear to advance two arguments about Claim 5 of the '029 Patent.  Dickie Decl. (Dkt. 266-1) Ex. B Col. 10, ll. 4.  Defendants argue that the prosecution history of the '029 Patent requires the Court to construe Claim 5 narrowly to disclose only devices where the "pawl rides in a **loop**."  Sealed Mot. 16.  In addition, Defendants argue that this phrase should be construed to mean the pawl pathway is "**located on the trigger**."

Regarding the first argument, Defendants fail to adequately show that the *prosecution history* narrowed Claim 5 to disclose only those devices where the "pawl rides in a **loop**."  As Plaintiff correctly notes, Defendants improperly import the "loop" reference from *Claim 6* of the '029 Patent and from the *Description*.  Opp'n 14.[9]  However, Defendants cite no arguments advanced by Plaintiff *in the prosecution history* that Claim 5 should be *limited* by incorporating Claim 6.  Nor do the Defendants cite any arguments advanced by Plaintiff *in the prosecution history* that Claim 5 should be *limited* by the Description in the '029 Patent.  Without such evidence of narrowing during the prosecution history, it would be improper to read into Claim 5 the loop limitation from the Description or Claim 6.  *See Specialty Composites v. Cabot Corp.*,

---

[8] In addition, estoppel from asserting an argument about a limitation applies to all claims in which that limitation appears.  *Eagle Comtronics*, 305 F.3d at 1316.  Whether a patentee is presumptively estopped from asserting equivalents for an amended claim element is a question of law.  *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004).

[9] *See also* Dickie Decl. (Dkt. 266-1), Ex. B at 22 (Claim 6 disclosing "a looped trigger pathway"); Ex. B at 19-20; Col. 4, ll. 64-65 (Description stating that "a portion of the pawl rides in a looped pathway on the trigger" and that the pawl "starts along a pathway . . . to finish a complete loop").

845 F.2d 981, 987 (Fed. Cir. 1988) "What is patented is not restricted to the examples, but is defined by the words in the claims.").

Regarding Defendants' second proposed claim construction that the pawl pathway is "**located on the trigger**," the Court finds no distinction between Defendants' construction and Plaintiff's construction of a "trigger pathway" or "pathway in the trigger."  Indeed, Defendants' own expert describes the Claim 5 limitation as a "**pathway** located **in** the trigger."  Visser Decl. 18:19 (emphasis added).  Thus, while Defendants are correct that Plaintiff repeatedly distinguished prior art by arguing before the PTO that only the '029 patent disclosed a "trigger pathway," Plaintiff's argument before the PTO is no different from the one it now asserts.  *See* Dickie Decl. (Dkt. 266-1), Ex. C at 31.  Thus, Plaintiff is not estopped from arguing that Claim 5 discloses a "trigger pathway" or "pathway in the trigger."

In sum, the Court rejects Defendants' construction of Claim 5 as disclosing a "loop" and construes Claim 5's limitation of a "trigger pathway" to mean "pathway in the trigger."

> ### ii.   Defendants fail to show that no reasonable jury could conclude Defendants' device has Claim 5's limitation of a *pathway in the trigger*

Defendants assert that they are entitled to summary judgment of non-infringement because no reasonable jury could conclude that Defendants' RSC-432 contains Claim 5's limitation of a "pathway in the trigger."

Defendants' primary argument—that the RSC-432 does not infringe because it lacks a loop—is unavailing because this Court refuses to construe Claim 5 so narrowly as to include only devices where the "pawl rides in a loop."  Thus, even if RSC-432 lacks a loop, this absence is irrelevant to the infringement inquiry.

Defendants' alternative arguments are also not availing.  Defendants' two-sentence contention that the RSC-432 is not infringing because it does not require the pawl to travel in only one direction is unavailing because Defendants offer absolutely no argument to show that Claim 5 was narrowed to disclose only a pawl that travels in one direction.  *See* Sealed Mot. 17:1-2.  Similarly, Defendants' argument that the embodiment of the '029 Patent has a trigger

pathway which is "within the recess portion of the trigger" is irrelevant because Defendants offer absolutely no argument to show that Claim 5 was narrowed to disclose *only* a *recessed* trigger pathway. *See* Visser Decl. 19:14-19.

Ultimately, Defendants' non-infringement argument fails because Defendants do not provide a word other than "trigger" to describe the *location* of the pathway on the RSC-432 through which the pawl moves. Defendants and their expert concede that the RSC-432 has a pawl and an "opening through which a pawl passes." *See* Visser. Decl. at 19:4-5 ("I accept that the pushrod could also be described as a pawl"); 20 at 4-6. In Figure 15 of Plaintiff's expert report, there is an area on the RSC-432 at 108, identified as a "Trigger," and an opening within this area at 138, identified as a "Pathway." *See* Dickie Decl. (Dkt. 266-2) Ex. O at 283. Defendants do not contest the accuracy of Figure 15 or explain how the pathway is not located on the Trigger at 108. Instead, Defendants simply deflect attention to Figures 7 and 9, where the Trigger is turned on its side and thus the Pathway is not visible. *See* Sealed Mot. 16-17.

Because Defendants have failed to meet their burden of showing that no reasonable jury could conclude that the RSC-432 contains Claim 5's limitation of a "pathway in the trigger," Defendants' motion for summary judgment of non-infringement on Claim 5 of the '029 Patent is DENIED.[10]

### c. Defendants have failed to show as a matter of law that their RSC-432 knife does not infringe Claims 3 or 4 of the '640 Patent

Defendants appear to contend that they are entitled to summary judgment regarding infringement of Claims 3 and 4 of the '640 Patent because the Claims should be construed

---

[10] The Court notes that Defendants' courtesy copy of their expert report purporting to show the non-infringement of RSC-432 by use of *color-coded* comparisons with Plaintiff's '029 Patent contained only *black-and-white* graphics. *See* Dickie Decl., Ex. Q at 316. Although the Court was able to rely on Defendants' electronic filing, Defendants would benefit from filing courtesy copies in color in the future if their argument depends on color coding.

narrowly to disclose only a device that has "guide channels and lugs," and Defendants' RSC-432 knife lacks such guide channels and lugs.[11]   Sealed Mot. (Dkt. 275) 18:17-18, 20:19-23.

### i.  The Court construes Claims 3 and 4 as disclosing a *curve that returns to or near its starting point*

Because a patent is "defined by the words in the claims," rather than the examples in its specification, "[p]articular embodiments appearing in the specification will not generally be read into the claims." *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir.1988). Thus, a showing that the patent's specification exclusively uses one term or embodiment is not enough to prove that the patent claim is limited to that specification, and thus not enough to prove non-infringement. *Id.* Indeed, if claims were read to cover only the specification or embodiment, "there would be no need for claims" and a patentee could never claim more than the embodiment. *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

Claim 3 of the '640 Patent discloses a knife with the limitation "wherein the locking action of the cutting tool is provided by a **strut** which is pivotally **joined to the guard member**, the distal end of the **strut being arranged to follow a loop**."  Dickie Decl. (Dkt. 266-2) Ex. K at 232, col. 7, ll. 54-57.  Claim 4 incorporates Claim 3, and thus contains the same limitation. *See Id.* at 232, col. 7, ll. 58-59.

Defendants appear to argue that Claims 3 and 4 should be construed to disclose a device with "**guide channels and lugs**."  Sealed Mot. (Dkt. 275) 18:12-20.  Defendants appear to base this argument on the presence of guide channels and lugs in the specification and embodiment. *Id.*

The Court rejects Defendants' narrow construction of Claims 3 and 4 as disclosing only a device with "guide channels and lugs."  Defendants cite no authority for why the specification

---

[11] As Plaintiff notes in its Opposition, Defendants never explicitly state the claim construction they advocate.  The Court is left to deduce Defendants' proposed construction based on Defendants' argument that their RSC-432 lacks certain limitations.

and embodiment should be read into Claims 3 and 4.[12]  Defendants' argument that the '640 Patent's specification and embodiment *include* guide channels and lugs does not prove that Claims 3 and 4 *exclude* devices that *lack* guide channels and lugs.  *See Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir.1988) (holding that patent's inclusion of examples of "external" plasticizers did not prove that patent claims excluded internal plasticizers).

In addition, the Court accepts Plaintiff's argument, based on a dictionary, that the ordinary meaning of the phrase "to follow a loop" is to have a "curve that returns to or near its starting point."  Opp'n 22:14-16.  Defendants do not propose a distinguishable alternative to Plaintiff's the construction.  *See* Visser Decl. at 21:19 ("arranged to follow a loop" includes "structures that create a loop").

In sum, the Court rejects Defendants' construction to the extent it has a "guide channels and lugs" limitation and construes the limitations in Claims 3 and 4 of "to follow a loop" is to have a "curve that returns to or near its starting point."

### ii. Defendants fail to show that no reasonable jury could conclude Defendants' device has the limitation in Claims 3 and 4 of a *curve that returns to or near its starting point*

Defendants assert that they are entitled to summary judgment of non-infringement because no reasonable jury could conclude that the RSC-432 has the limitation in Claims 3 and 4 of a "strut which is arranged to follow a loop."  Sealed Mot. 17.  However, Defendants' only argument—that the RSC-432 is not infringing because it lacks guide channels and lugs—is unavailing because this Court refuses to narrowly construe Claims 3 and 4 as requiring guide channels and lugs.  Thus, even if RSC-432 lacks guide channels and lugs, this absence is irrelevant to the infringement inquiry.

---

[12] Defendants' half-hearted argument that having "guide channels and lugs" is just the "ordinary" meaning of the phrase "being arranged to follow a loop" is implausible on its face and unsupported.  *See* Sealed Mot. (Dkt. 275) 18:6-18.

In addition, Defendants' non-infringement argument fails because Defendants do not provide a phrase other than a "curve that returns to or near its starting point" to describe the *direction* that the distal end of the strut on the RSC-432 follows.  Defendants and their expert concede that the RSC-432 has a "strut/pushrod" with a "distal end."  *See* Dickie Decl., Ex. Q at 368.  Thus, it appears that the only part of Claims 3 and 4 that Defendants do not concede—but also does not refute—is whether the strut follows a "curve that returns to or near its starting point."

Because Defendants have failed to meet their burden of showing that no reasonable jury could conclude that the RSC-432 contains the limitation in Claims 3 and 4 of a strut with a distal end that follows a "curve that returns to or near its starting point," Defendants' motion for summary judgment of non-infringement on Claims 3 and 4 of the '640 Patent is DENIED.

### d. Defendants fail that Plaintiff's pre-litigation internal email is an adequate basis for summary judgment as a matter of law

 "[I]nventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims."  *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000).  This is because "the subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)."  *See Markman*, 52 F.3d at 985.

Defendants assert, without authority, that they are entitled to summary judgment of non-infringement on the Claims 3 and 4 of the '640 Patent because, prior to the present litigation, Plaintiff's President stated in an internal email that Defendants' RSC-432 did not infringe Plaintiff's pending patents.  Sealed Mot. (Dkt. 275) 9.  Specifically, Plaintiff's President stated in an email that Plaintiff "ha[s] run [Defendants' RSC-432] by our IP attorneys" and the device does "not infringed on [Plaintiff's] patents or pending patents."  Sealed Mot. (Dkt. 275) 9.

Plaintiff's internal email, which was created well before the present litigation and which does not even mention the patent-in-suit, is not an adequate basis for summary judgment as a matter of law.  *See Solomon*, 216 F.3d at 1380 (reversing summary judgment for defendant

where district court held patent was invalid by relying on plaintiff-inventor's deposition testimony).

**IV.     Disposition**

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED regarding: (1) Claim 9 of the '928 Patent; and (2) Claims 1 through 4 of the '029 Patent.

Motion for Summary Judgment of invalidity and non-infringement is DENIED regarding: (1) Claim 5 of the '029 Patent; and (2) Claims 3 and 4 of the '640 Patent.

DATED:      November 14, 2011

_David O. Carter_

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE